[Cite as *State v. Jackson*, 2014-Ohio-1514.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100048

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEVAUGHN JACKSON

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-90-247635

**BEFORE:**  Rocco, J., Boyle, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**  April 10, 2014

**ATTORNEY FOR APPELLANT**

Keith E. Golden
Golden & Meizlish Co., L.P.A.
923 E. Broad Street
Columbus, OH   43205

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Mary H. McGrath
Assistant County Prosecutor
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, OH   44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant DeVaughn Jackson appeals from the trial court order that denied his second petition for postconviction relief.

{¶2} Jackson presents one assignment of error, arguing that, in light of the evidence he attached to his petition, the trial court abused its discretion in determining the petition was untimely and in denying it. Because the record reflects the trial court lacked jurisdiction to do otherwise, Jackson's assignment of error is overruled.

{¶3} This court previously addressed Jackson's original convictions in *State v. Jackson*, 8th Dist. Cuyahoga No. 60435, 1992 Ohio App. LEXIS 2364 (May 7, 1992) ("*Jackson I*"). Jackson had been charged in 1989 with three others in the shooting death of Kevin Fielding. In relevant part, this court set forth the facts in *Jackson I* as follows:

> Defendant-appellant DeVaughn Jackson ("Jackson") appeals from his jury-trial conviction of one count of aggravated murder [R.C. 2903.01] and one count of aggravated robbery [R.C. 2911.01], each with firearm specifications.* * *
>
> A review of the record reveals that the twenty-five year old victim in this case, Kevin T. Fielding ("Fielding"), died from a single contact gunshot through his left ear on December 31, 1988, at approximately 4:30 a.m. The corpse was found slumped over in the driver's seat of his Mazda 626. This car was found in the parking lot area of a Dairy Mart convenience store * * * in the City of East Cleveland.
>
> At the trial, the prosecution presented the testimony of ten witnesses.
>
> * * *
>
> The seventh witness was Robert Kalvitz, an East Cleveland police detective, who stated that Mr. Tremel Smith told him at the police station on January 3, 1989, * * * that he had information about the homicide in question, specifically, who was involved and

where they could be found. Up to this point, the police had no leads in the investigation. Mr. Smith identified the following as having involvement with the shooting: Andre King aka "Dre"; [Jackson] aka "Capone"; and Charles Van Johnson. * * * .

* * *

The ninth witness was Tremel Smith who testified that:
* * * (4) his girlfriend was Rita Peak; (5) he, Miss Peak and Mr. Johnson were at an apartment on Wymore Avenue in the early morning hours of the day of the shooting, drinking beer and smoking cocaine; * * * (8) Mr. Johnson wanted * * * Miss Peak to go out and perform an act of prostitution in order to obtain funds to buy drugs for the group's benefit; * * * (10) [Smith], Miss Peak, and Mr. Johnson walked together to the area of the Dairy Mart store; (11) Mr. Johnson talked to [Fielding] as he, [Fielding], was parked in his car in front of the store; (12) Miss Peak then walked to the car as Mr. Johnson walked to the store * * * ; (13) [Smith] stood beside a telephone booth near the parking lot and observed the unfolding events; * * * (15) Miss Peak was touching and talking to [Fielding] as they sat inside the car; (16) he * * * saw Mr. King and [Jackson] walking on Chapman Avenue toward [Fielding]'s car, having exited Mr. Johnson's car; (17) Mr. King pulled Miss Peak from the car, entered the car, and began wrestling with [Fielding]; (18) Miss Peak then stood with [Smith] by the telephone booth;
* * * (20) [Jackson] opened the driver's door, put a gun to [Fielding]'s left ear, and fired one shot into [Fielding]'s head as Mr. King exited the car; (21) [Smith] and Miss Peak, after the shooting, walked to an apartment on Wymore Avenue; * * * (23) [Jackson], Mr. King and Mr. Johnson arrived at the apartment several minutes later and threatened [Smith] to remain silent about the shooting * * * .

The tenth witness was Edward Barko, the acting chief of police in East Cleveland, who stated that: * * * (6) [Jackson] was interviewed, subsequent to his arrest, on November 1, 1989, following a reading of his rights and gave an oral statement only; (7) Mr. Smith and Miss Peak both named [Jackson] as the triggerman; (9) [Jackson] denied being present at the shooting;
* * * [but, later,] (12) [Jackson] broke down and confessed saying "You got me" * * * .

* * *

The defense * * * offered the testimony of two witnesses in its case-in-chief.

The first witness for the defense was Anthony Matthews, a nineteen year old friend of [Jackson's]* * * . Mr. Matthews testified that: (1) [Jackson] and Mr. King picked him up * * * about 7:00 p.m. on the evening before the shooting;  * * * ; (3) Mr. King was driving * * * ; (4) they drove around * * * ; (5) they left the Near West Side of Cleveland

around midnight * * * , arriving at King's house between 1:30-2:00 a.m.; (7) [Jackson] and Mr. King went inside the house * * * . * * *

[Jackson] then took the stand in his own defense, testifying that: (1) he borrowed Mr. Johnsons [sic] car and, with Mr. King, left around 9:30 p.m. on the night before the shooting with the purpose of selling drugs as they drove around; * * * (3) they * * * picked up Mr. Matthews * * * ; (4) Mr. King, [Jackson], and Mr. Matthews then drove around, stopping periodically to sell drugs * * * ; (5) as they headed back toward East Cleveland around 2:00 a.m., the car was flagged down by Mr. Johnson and Miss Peak; * * * (7) they arrived at Mr. King's apartment building at 2:30 a.m. with Mr. King and [Jackson] getting out, and the other three then left * * * ; (8) he and Mr. King remained at Mr. King's apartment the rest of the night; * * * ;

(20) Mr. Smith and Miss Peak lied in their statements to the police; * * * .

{¶4} After considering the evidence, the jury found Jackson guilty of aggravated murder and aggravated robbery, both with firearm specifications. The trial court sentenced him to consecutive terms of three years each for the firearm specifications, thirty years without the possibility of parole, and ten to twenty-five years.

{¶5} In his direct appeal of his convictions in *Jackson I*, Jackson presented five assignments of error; he challenged the trial court's decisions to admit certain evidence, the warrantless search of King's apartment, and the sufficiency of the evidence to support his convictions. None of his challenges was successful. Subsequently, the Ohio Supreme Court declined to review his case. *State v. Jackson*, 65 Ohio St.3d 1440, 600 N.E.2d 683 (1992).

{¶6} Jackson filed his first petition for postconviction relief with the trial court in 1996. Therein, he argued that he had received ineffective assistance of trial counsel because counsel had failed to conduct a pretrial investigation, failed to secure necessary documents, and failed to subpoena important defense witnesses.

**{¶7}** One of these witnesses Jackson faulted defense counsel for failing to subpoena in *Jackson I* was Andre King. Jackson argued in his first petition that King's "testimony could have been used as an alibi being that [Jackson] and Andre King was [sic] together the whole time when state's principal witness Tremel Smith accused the both of them of being together at the crime scene as perpetrators." In support, Jackson attached several evidentiary items to his petition, including King's affidavit.

**{¶8}** In relevant part, King stated in his affidavit that he had pleaded guilty to in this case to a lesser charge of manslaughter because "three other people [also] had been indicted * * * [a]nd they all have been found guilty of Murder." King averred that one of those people, "Devaughn Jackson[,] was at my house with me," and neither of them was "involved" in the crime, "nor do I have any knowledge of any plot including Charles Johnson or DeVaughn Jackson to rob or kill Kevin Fielding." King's affidavit was dated March 9, 1993.

**{¶9}** On October 10, 1996, the trial court denied Jackson's first petition for postconviction relief. Jackson thereafter filed an untimely appeal from the trial court's decision, which this court dismissed.

**{¶10}** On March 29, 2012, twenty-two years after his original convictions, Jackson filed the petition for postconviction relief at issue in the instant appeal. In his brief in support of his petition, he argued that he was "now in possession of newly discovered evidence proving his actual innocence." The newly discovered evidence was "in the form of the attached affidavit of Andre King," which was not only "completely

exculpatory," but, despite the fact that it was dated July 29, 2003, also was "only recently obtained." Jackson claimed that he had just learned that the affidavit had been in the possession of an "elderly relative" who had "misplaced" it.

{¶11} Jackson asserted that King would provide testimony that would exonerate him. Jackson argued that he was "excusably ignorant of King's false statements against him because King provided the [false] statements to law enforcement in exchange for a favorable plea deal * * * ."

{¶12} Directly opposite to the foregoing, however, and in disregard of the fact that King did not testify at Jackson's trial, Jackson also argued that King's affidavit showed a "strong probability that it would change the result if a new trial is granted, because King's guilty plea and statements against [Jackson] were critical pieces of evidence leading to" Jackson's convictions. Jackson claimed that an exercise of "due diligence would not have resulted in the discovery of the evidence because King was not willing to change his story and come forward with the truth until 2003."

{¶13} In support of his assertions, Jackson attached King's 2003 affidavit. Therein, King essentially made the same statements that he made in his 1993 affidavit, i.e., that Jackson "was at my house and could not have committed the offense as accused," that King entered a guilty plea to a lesser offense because he felt he had little choice, and that neither he nor Jackson nor Johnson was involved in "any plot * * * to rob or kill Kevin Fielding." Jackson, however, failed to supply his own affidavit in support of his petition.

**{¶14}** After the state filed a responsive brief, the trial court denied Jackson's second petition "as untimely filed and failing to come within the provisions of R.C. 2953.23(A)(1)(a) and (B) [sic] to permit consideration of an untimely filed petition."

**{¶15}** Jackson appeals from the trial court's order and presents one assignment of error as follows:

> I.   The lower court erred in finding that the Appellant's post-conviction motion [sic] pursuant to O.R.C. 2953.21 was untimely filed, as the motion rested upon previously undiscoverable evidence that demonstrated the Appellant's innocence.

**{¶16}** Jackson argues the trial court abused its discretion in denying his petition because he presented evidence that met the requirements set forth in R.C. 2953.23(A)(1). This court finds his argument is baseless.

**{¶17}** Jackson filed his second petition pursuant to R.C. 2953.21 and R.C. 2953.23.   R.C. 2953.21 states in relevant part:

> (A)(1)(a) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States* * * , may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner

may file a supporting affidavit and other documentary evidence in support of the claim for relief.

* * *

(2) Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication * * * .   * * *

{¶18} R.C. 2953.23 provides in relevant part:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) * * * of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right. * * *

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * * .

{¶19} The timeliness requirement of R.C. 2953.21 is jurisdictional. *State v. Beaver*, 131 Ohio App.3d 458, 722 N.E.2d 1046 (11th Dist.1998); *State v. Cobb*, 8th Dist. Cuyahoga No. 80265, 2002-Ohio-2138, ¶ 30. Thus, a trial court lacks jurisdiction to entertain an untimely filed petition for postconviction relief that does not meet the exceptions set forth by, in this case, R.C. 2953.23(A)(1). *Beaver*; *State v. Hill*, 129 Ohio App.3d 658, 661, 718 N.E.2d 978 (1st Dist.1998); *State v. Gipson*, 12th Dist. Warren No. CA2001-11-103, 2002-Ohio-4128, ¶ 16.

{¶20} The circumstance Jackson cited as his excuse for filing a "delayed" petition, viz., a relative's misplacement of King's affidavit, remained unsubstantiated. Jackson did not supply his own affidavit; in short, he supplied no proof of any of his assertions.

{¶21} At any event, as this court's detailed recitation of the facts of this case demonstrates, Jackson presented a nearly identical 1993 affidavit from King attached to the first untimely petition for postconviction relief. Under these circumstances, he could not establish either that he was "unavoidably prevented" from discovering "new" evidence or that any "constitutional error" occurred at his trial.

{¶22} Because Jackson failed to meet the prerequisites for filing an untimely petition for postconviction relief, the trial court lacked jurisdiction to consider it. Therefore, no abuse of discretion occurred. *State v. Crum*, 5th Dist. Stark No. 2005CA00024, 2005-Ohio-7037.

{¶23} Jackson's assignment of error is overruled.

{¶24} The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, A.J., and
SEAN C. GALLAGHER, J., CONCUR